IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 2:24-CR-056-Z |
| VICTOR TORRES | |

## FACTUAL RESUME

In support of Victor Torres's plea of guilty to the offenses in Counts Three and Four of the Indictment, Torres, the defendant, Felipe Zavala, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offenses alleged in Counts Three and Four of the Indictment, each charging a violation of 18 U.S.C. § 2251(a), that is, Production and Attempted Production of Child Pornography, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First.*  That the defendant employed, used, persuaded, induced, enticed, coerced, or attempted to employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct;

*Second.*  That the defendant acted with the purpose of producing a visual depiction or transmitting a live visual depiction of such conduct; and

*Third.*  That the visual depiction was actually transported or transmitted using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, or mailed.

Or that the visual depiction was produced or transmitted using

---

[1] Fifth Circuit Pattern Jury Instruction 2.84 (5th Cir. 2024).

Victor Torres
Factual Resume—Page 1

materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

Or that the defendant knew or had reason to know that the visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

The term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communication facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device.

The term "minor" means any person under the age of eighteen years.

"Sexually explicit conduct" means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation, sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person.

Be cautioned that not every exposure of the genitals or pubic area constitutes lascivious exhibition. Whether a visual depiction constitutes a lascivious exhibition requires a consideration of the overall content of the material. You may consider such factors as: (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; (2) whether the setting of the depiction is sexually suggestive, that is, in a place or pose associated with sexual activity; (3) whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the depiction is designed to elicit a sexual response in the viewer. This list is not exhaustive, and no single factor is dispositive.

The term "producing" means producing, directing, manufacturing, issuing,

publishing, or advertising.

"Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means that is capable of conversion into a visual image, and data that is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## STIPULATED FACTS

1. Victor Torres admits and agrees that from in or around March 2023, to in or around October 2023, in the Amarillo Division of the Northern District of Texas, and elsewhere, he, the defendant, attempted to or did employ, use, persuade, induce, coerce, or entice, "Jane Doe-3," a person under the age of eighteen years, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing or having reason to know that such visual depiction would be transported or transmitted in interstate or foreign commerce, or which visual depiction was actually transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which visual depiction was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer. In violation of Title 18, United States Code, Section 2251(a).

2. Victor Torres admits and agrees that from in or around January 2023, to in or around March 2023, in the Amarillo Division of the Northern District of Texas, and elsewhere, he, the defendant, attempted to or did employ, use, persuade, induce, coerce, or entice, "Jane Doe-4," a person under the age of eighteen years, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing

or having reason to know that such visual depiction would be transported or transmitted in interstate or foreign commerce, or which visual depiction was actually transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which visual depiction was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer. In violation of Title 18, United States Code, Section 2251(a).

3. In 2023, Homeland Security Investigations (HSI) in Amarillo, Texas, was contacted by an HSI agent in Harrisonburg, Virginia about a potential subject in the Amarillo Division. Harrisonburg HSI interviewed a minor victim about a subject trying to pay her for sharing sexually explicit photographs online. Harrisonburg agents obtained account information for the online payment application used in the case and believed the suspect lived in Dumas, Texas. Agents identified four different account names used by the suspect. They were all registered to Dumas resident Victor Torres, the defendant, with Torres's date of birth and social security number. Several of the accounts listed Torres's home address in Dumas and his cell phone number.

4. Agents obtained transaction records for the four accounts from the online payment application from January 21, 2023, through June 28, 2023. During that time frame, Torres participated in 701 transactions with 21 different accounts believed to be used by minors. Some of the transactions were denied or expired. The total amount of money transferred, or attempted to be transferred, from Torres's four accounts to accounts used by possible minors was $14,400.83. The transactions included short

Victor Torres
Factual Resume—Page 4

messages, such as: "u cute [as fuck]," "I buy content," "10 for titty or 20 for boby[sic]," "send 30 with number and I'll send 10 pictures/vid[eo]." Torres was 30 years old at the time, but frequently told minors that he was 17 years old in his communications with the minors.

5.  Through HSI's investigation, it identified multiple minors who had communicated with Torres, including "Jane Doe-3" and "Jane Doe-4." Jane Doe-3 was 14 years old and lived in New York. When interviewed, she told law enforcement that she received money from someone through an online payment application sometime the prior year. That person instructed her to send him a text message. Transactions from Torres's account revealed this occurred between March and June 2023. Jane Doe-3 didn't know how Torres located her. Torres requested photos of her. Jane Doe-3 complied and sent some. Jane Doe-3 described the photos as "inappropriate." She elaborated that she sent Torres some clothed and some full-frontal nude photos and at least one video of herself. Torres paid Jane Doe-3 $35 for the clothed photographs and $75 for the nude photographs. Torres's transaction record also revealed one $100 payment to Jane Doe-3. Jane Doe-3 said Torres told her how to pose in the photos and videos and might have told her what objects to use. Jane Doe-3 said she eventually blocked Torres and deleted all record of their communications.

6.  Further investigation by HSI revealed the National Center for Missing and Exploited Children had evidence that a Snapchat account used by Torres uploaded child pornography on several occasions, including a 48-second video of anal-genital sexual intercourse between a toddler and an adult male.

7. In June 2024, HSI obtained, and executed, a federal search warrant for Torres's residence in Dumas. Torres was interviewed and repeatedly denied ownership of the cell phone located in his bedroom. Subscriber information associated with that phone revealed it was registered to Torres at his Dumas residence. Torres also denied ever using Snapchat, Instagram, or Twitter. He also denied using any money transfer applications, including the ones described in this factual resume. Torres claimed the reason there was an account created with his phone number linked to it was because it was previously used under his prior employer to split costs for hotel stays amongst coworkers. Torres denied ever sending money to minors or requesting child pornography.

8. Two cell phones were collected from Torres's residence and forensically searched: a Samsung Galaxy SM-A536UI cell phone with a black case and IMEI 351024051557945 (phone 1), and a silver Samsung Galaxy S20, SM-G981U1 cell phone with IMEI 352620111472980 (phone 2). Phone 1 was associated with Torres's known phone number. The Google Drive, Google Photos, Gmail, Whatsapp, and Mega accounts on phone 1 had been logged in under Torres's name and passwords. Text messages were sent from phone 1 that identified the user as Torres. The Google Chrome "autocomplete" section revealed Torres had likely searched for the following in the past: small girl, little girls, little model, daddy's girl, Lolita, 12 year, 14yr selfie, 9yr, ebony kid, naked kid, jailbait, open legs kids. Phone 1 also had information linking it to the accounts used by Torres to transfer money to minors in exchange for child pornography. There were also thousands of files of child pornography located on phone 1. Phone 1's Internet history

revealed that Torres was online searching for and downloading child pornography approximately five hours before the search of his residence.

9. A forensic search was also conducted of phone 2. Phone 2 was assigned the cell phone number connected to the online payment application accounts. Information was located on phone 2 that indicated Torres was the sole user and owner. Phone 2 was used from approximately September 2020 through January 2024. A conversation was located on phone 2 between Torres and Jane Doe-3 from March to October 2023. Throughout the conversation, Torres repeatedly instructed Jane Doe-3 on how to produce sexually explicit images of herself. Torres often sent Jane Doe-3 pornography images, including close-up photographs of a woman's vulva, and requested she create the same image of herself. Jane Doe-3 did so at Torres's direction multiple times. Messages between Torres and Jane Doe-3 confirmed that Torres knew Jane Doe-3 was a minor and that he was specifically seeking out sexually explicit images of minors. In response to one close-up photograph of the lascivious exhibition of Jane Doe-3's vaginal area, Torres responded: "Baby that pussy looks so damn small [and] tight," and "Your pussy look[s] like [it's] 13 [years old]." Jane Doe-3 responded that she was 16 years old (Jane Doe-3 was actually 13 to 14 years old at the time). Torres asked Jane Doe-3 if she had any friends her age or cousins that would be willing to send child pornography to him. Jane Doe-3 responded that she had a four-year-old niece. Torres excitedly replied: "Damn… yea cuz I'd [pay] more," and "if u could get pics of cousins I can pay [$]40 per pic… I wish u had sisters… I'd pay u for [their] pics."

10. Later in the conversation, Torres sent another pornographic photo of an adult female to Jane Doe-3 with her breasts and vulva exposed and asked: "Can u do that[?]" Jane Doe-3 sent a photo of herself in the same position with her breasts and vulva exposed. Torres next asked if Jane Doe-3 was available for a video chat and if she had a sex toy she could use in the video chat. Torres suggested she use a marker or toothbrush as a sex toy in the video chat. A video chat between Torres and Jane Doe-3 occurred on a different platform and was not recorded. Torres referenced the video chat later in the text conversation and said: "Damn it was good." Later in the conversation, another video chat occurred. Before this video chat, Torres sent a pornographic photo of a woman with a hairbrush inserted in her vulva and requested Jane Doe-3 use her hairbrush and "do like her." HSI agents located a screen recording of this video chat on phone 2. It was a two-minute-and-forty-three-second video depicting Jane Doe-3 fully nude masturbating with her hairbrush. During the video chat, Torres returned to a texting platform to instruct Jane Doe-3 on additional sexual acts to perform. Torres messaged Jane Doe-3: "I want u to fuck yourself hard and fast moan loud…Tell [me] u want me to fuck your 14 [year old] pussy and to cum in u." This video is child pornography as defined by 18 U.S.C. § 2256(8). The video was produced at Torres's direction and screen recorded by Torres on his phone.

11. Torres offered Jane Doe-3 $2,000 to have sex with him. Torres told Jane Doe-3: "I want to make u scream with my dick." Jane Doe-3 told Torres she lived in New York and Torres responded: "I'll go… I want to cum in u." The text communication continued in the same manner, with Torres sending pornography and

Victor Torres
Factual Resume—Page 8

specific instructions on what child pornography Jane Doe-3 should replicate. Torres asked if Jane Doe-3 could take photographs with a prepubescent female that Jane Doe-3 knew. Torres said he would pay $50 per photograph.

12. A full review of phone 2 revealed thousands of photographs and videos of child pornography. Phone 2 also contained approximately 35 files of child pornography of Jane Doe-3 that were sent via the text messaging platform.

13. HSI agents located another victim through the forensic examination of phone 2, Jane Doe-4. Torres engaged in the same type of behavior with Jane Doe-4. He discussed payment for photographs, sent her instructions on what photographs and videos to produce, and paid Jane Doe-4 for the child pornography that Jane Doe-4 produced. A review of Torres's online payment platform revealed that he sent Jane Doe-4 62 separate payments totaling $1,316.02 between January 22, 2023, and March 17, 2023. HSI agents located a video of child pornography on Torres's phone that appeared to be a screen recording of a video chat between Torres and Jane Doe-4. The video was five minutes and four seconds long and depicted Jane Doe-4 completely nude using a pink sex toy to masturbate.

14. Messages on Torres's phone revealed additional child pornography sent by Jane Doe-4 to Torres. Jane Doe-4 was identified as a minor living in South Carolina. Jane Doe-4 was 13 to 14 years old when she was victimized by Torres from approximately January 2023 to ~~May 2024~~ *at March, 2023* (*VT*). She was forensically interviewed and described sending sexually explicit photographs to someone online in exchange for money. She identified one of Torres's online payment platform usernames. She further

Victor Torres
Factual Resume—Page 9

described that Torres would tell her exactly what to do in the photos and what photos to take. Jane Doe-4 said she would set the price for each photo. These photographs and the screen recording described above are child pornography as defined by 18 U.S.C. § 2256(8). These photographs and video were produced at Torres's direction and through screen recording on his cell phone.

15. Jane Doe-3 and Jane Doe-4 were both less than 18 years of age when Torres employed, used, persuaded, induced, coerced, or enticed them into producing sexually explicit photographs and videos of themselves. The photographs and videos are child pornography, as defined by 18 U.S.C. § 2256(8) and in this factual resume. The photographs and videos of child pornography produced were produced or transported in or affecting interstate or foreign commerce. Specifically, Torres used the Internet and his Samsung cell phones to communicate with out-of-state victims and to coerce them to produce and send him child pornography. Samsung cell phones are not manufactured in the State of Texas, so prior to Torres's use of each one, they had traveled in interstate or foreign commerce.

16. Torres admits and agrees that he knew Jane Doe-3 and Jane Doe-4 were less than 18 years of age. Torres also admits and agrees that he employed, used, persuaded, induced, coerced, or enticed Jane Doe-3 and Jane Doe-4 to engage in sexually explicit conduct. He admits and agrees that he acted with the purpose of producing a visual depiction or transmitting a live visual depiction of such conduct. Torres admits and agrees the visual depictions were produced or transmitted using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any

Victor Torres
Factual Resume—Page 10

means, including by computer. That is, Torres used electronic devices that meet the definition of a "computer" and were manufactured outside the State of Texas to produce the videos and images of child pornography of Jane Doe-3 and Jane Doe-4. Torres admits and agrees that he produced child pornography of Jane Doe-3 and Jane Doe-4, as that term is defined in 18 U.S.C. § 2256(8) and in this factual resume, which are charged in Counts Three and Four of the Indictment. Torres admits and agrees that his conduct is a violation of Title 18, United States Code, Section 2251(a), Production and Attempted Production of Child Pornography for the photographs and videos produced of Jane Doe-3 and Jane Doe-4.

17. Torres admits and agrees that he used multiple devices to produce the child pornography, receive the child pornography, and store the child pornography. Torres's Samsung cell phones and other devices collected by law enforcement were property used, or intended to be used, to commit, or to promote the commission of the crimes to which he is pleading guilty and, therefore, Torres agrees that those items should be forfeited to the United States under 18 U.S.C. § 2253.

18. The defendant agrees that the defendant committed all the essential elements of the offenses. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Counts Three and Four of the Indictment.

AGREED TO AND STIPULATED on this 6t day of May, 2025.

                                                CHAD E. MEACHAM
                                                ACTING UNITED STATES ATTORNEY

_____    _____
VICTOR TORRES                               CALLIE WOOLAM
Defendant                                              Assistant United States Attorney
                                                      Texas State Bar No. 24075306
                                                      1205 Texas Avenue, Suite 700
                                                      Lubbock, Texas 79401
                                                      Telephone:   806-472-7564
                                                      Facsimile:    806-472-7394
                                                      E-mail:       callie.woolam@usdoj.gov

_____
FELIPE ZAVALA
Attorney for Defendant